UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| FREDERICK BARRETT,<br><br>Plaintiff,<br><br>vs.<br><br>VON & SUE DENNING TRUCKING LLC, JAMES HOWARD BOLAND,<br><br>Defendants. | 5:25-CV-05062-RAL<br><br>OPINION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT |

This case arises from a motor vehicle collision in Arizona. Plaintiff Frederick Barrett alleges that Defendant James Howard Boland caused the accident while driving a tractor trailer for his South Dakota employer Defendant Von & Sue Denning Trucking LLC (VSD). Because there are material questions of fact, this Court denies Barrett's motion for partial summary judgment on liability and VSD's vicarious liability.

## I. Facts

The collision occurred on April 3, 2023, on Interstate 40 in Arizona. Boland and Barrett were both traveling east, Boland in the right lane driving a tractor trailer owned by VSD and Barrett in the left lane driving a Dodge pickup. Doc. 42 ¶ 1; Doc. 45 ¶ 1; Doc. 45 ¶ 59; Doc. 43-2 at 1, 3; Doc. 43-1 at 7. The parties seem to agree that Barrett was passing Boland's tractor trailer when Boland's trailer crossed into the left lane and sideswiped Barrett's pickup. Doc. 42 ¶¶ 4, 5–6; Doc. 45 ¶¶ 4, 5–6; Doc. 43-1 at 7; Doc. 43-5 at 12–14. The driver's side of Boland's trailer near the rear axle struck the passenger side of Barrett's vehicle. Doc. 42 ¶ 5; Doc. 45 ¶ 5. Barrett ended

up in the median and Boland pulled off at a nearby exit. Doc. 43-1 at 4. The parties have different accounts, however, about what led to the accident.

Boland testified that he had been traveling behind Barrett's pickup earlier and that Barrett's pickup brake-checked him three times before the collision. Doc. 43-5 at 6, 12, 14. Boland said that Barrett's pickup cut in front of Boland's tractor trailer and slammed on the brakes, that Boland would then go around and pass Barrett's pickup, and that Barrett would then repass Boland's tractor trailer to brake check him again. Id. at 12. After Boland passed Barrett the third time, he saw Barrett coming after him in the left lane, presumably going over 100 miles per hour. Id. at 6, 12, 14. Boland said he saw Barrett in his mirror before moving into the left lane to pass another tractor trailer but did not realize how fast Barrett was driving. Id. at 13. Boland testified that his wife Kitty Boland was riding in the passenger seat of the tractor trailer and said Barrett displayed a gun one of the times he passed them. Id. at 16, 21–22, 27. Kitty testified that she had been in the sleeper but came into the passenger seat of the tractor trailer and saw Barrett pass and brake check them three times. Doc. 43-6 at 5; Doc. 45 ¶ 17. She said that Barrett pointed a gun at their tractor trailer the third time he passed them, that she became frightened and yelled to Boland, and that she went to the sleeper in the tractor trailer after Barrett brake-checked them the last time. Doc. 45 ¶¶ 17, 42; Doc. 43-6 at 5–6. Kitty explained that she did not see the collision itself since she was in the sleeper. Doc. 43-6 at 6, 8; Doc. 42 ¶¶ 17–18; Doc. 45 ¶¶ 17–18.

Though the parties didn't file a deposition from Barrett, he did speak with Arizona State Trooper Brent Haymore at the scene. Barrett told Trooper Haymore that he brake-checked Boland while driving in front of him. Doc. 43-1 at 8; Doc. 45 ¶¶ 35, 37; Doc. 43-2 at 4. Barrett reported that Boland had passed Barrett's pickup after the brake-checking and, when Barrett attempted then to pass Boland's tractor trailer, Boland forced Barrett's pickup into the median without any contact

between the vehicles. Doc. 45 ¶ 38; Doc. 43-1 at 11, 14; Doc. 43-2 at 4. According to Barrett, the accident happened when he pulled back onto the interstate and caught up with Boland's tractor trailer to flip him off and get his license plate number. Doc. 43-1 at 11; Doc. 45 ¶ 38; Doc. 43-2 at 4.

Edward and Misty Grumman, who witnessed the accident and made sworn statements in this case, also gave an account. Doc. 43-2 at 5; Doc. 43-1 at 10. Edward's affidavit states that he saw Boland's tractor trailer force Barrett's pickup off the road, that the pickup re-entered the highway, and that Boland then struck Barrett's pickup with the trailer when Barrett tried to pass him. Doc. 43-4 ¶ 6; Doc. 42 ¶ 12; Doc. 45 ¶ 12. Misti's affidavit says she saw Boland "aggressively force" Barrett's pickup into the median, "deliberately hit" Barrett when he tried to pass, and then flee the scene. Doc. 43-3 ¶ 6; Doc. 42 ¶ 11; Doc. 45 ¶ 11.

Trooper Haymore interviewed the parties and the Grummans at the scene and prepared a report. Doc. 42 ¶ 2; Doc. 45 ¶¶ 2, 34; Doc. 43-2. Trooper Haymore testified that the accident was "due to" Boland's tractor trailer moving from the right to the left lane, marking in the report that Boland committed an unsafe lane change. Doc. 43-1 at 7–8; Doc. 42 ¶ 3, 7; Doc. 45 ¶ 3, 7; Doc. 45 ¶ 46; Doc. 43-2 at 2. Trooper Haymore explained that Arizona law requires drivers to change lanes safely, that it was unsafe for Boland to move into a lane occupied by another vehicle and cause a collision, and that the driver changing lanes is responsible to verify that he could do so safely. Doc. 43-1 at 8; Doc. 42 ¶¶ 7–8; Doc. 45 ¶¶ 7–8. On the same page of the report, however, Trooper Haymore marked "possible road rage incident" as a contributing circumstance and stated that Barrett had been speeding. Doc. 43-2 at 2; Doc. 45 ¶¶ 32–33; Doc. 43-1 at 14. Trooper Haymore based his conclusions on the drivers' descriptions of events right before the accident. Doc. 43-1 at 7–8. Trooper Haymore testified that given the distance between where Barrett's

pickup initially went into the median and where the accident occurred, Barrett would have had to exceed the speed limit to catch up with Boland's tractor trailer. Id. at 8. Boland told Trooper Haymore that he was trying to pass another semitruck when the accident happened, and that he did not realize how fast Barrett was going when he switched lanes. Doc. 45 ¶ 36; Doc. 43-1 at 10. Trooper Haymore did not ticket Boland for an unsafe lane change or Barrett for speeding. Doc. 45 ¶ 48; Doc. 43-1 at 8.

Trooper Haymore testified that the statements the Grummans made in their affidavits were "close" to the statements they made when he interviewed them. Doc. 43-1 at 12. Trooper Haymore explained that although Edward's affidavit says he saw Boland force Barrett into the median, Edward had told Haymore that his attention was drawn to the situation because of the dust. Doc. 45 ¶ 51; Doc. 43-1 at 12. Trooper Haymore reasoned that if there was dust as Edward initially stated, Barrett would already have been in the median when the situation first caught Edward's attention. Doc. 45 ¶ 51; Doc. 43-1 at 12. Trooper Haymore also testified that he would expect a worse collision if Boland had aggressively and intentionally hit Barrett. Doc. 45 ¶ 58; Doc. 43-1 at 13.

Trooper Haymore's report did not mention Barrett brandishing a gun, and Boland and Kitty both admitted that they did not report Barrett brandishing the gun to the police. Doc. 42 ¶ 19; Doc. 45 ¶ 19; Doc. 43-5 at 27–28. Kitty testified that she did not report Barrett having a gun to the police because she was in shock at the time and did not want to speak to anyone. Doc. 43-6 at 9; Doc. 45 ¶ 19. Boland testified that he told Trooper Haymore that Kitty was in the sleeper and did not witness the crash because she was very upset and said she didn't want to talk with anyone. Doc. 45 ¶¶ 16, 41; Doc. 43-5 at 16; see also Doc. 43-1 at 10 (Trooper Haymore testifying he was told that Kitty was "in the sleeper berth and didn't witness anything"). Trooper Haymore thus

never spoke with Kitty, though he did confirm that Barrett removed a firearm and other items from his truck before it was towed. Doc. 45 ¶¶ 40, 43; Doc. 43-1 at 9.

Logan Denning, VSD's owner, testified as the company's Rule 30(b)(6) witness. Doc. 43-7 at 5. Denning testified that VSD's understanding of the rule for changing lanes is to signal, ensure no one is in the other lane, and then change lanes. Id. at 14; Doc. 42 ¶ 20; Doc. 45 ¶ 20. He agreed that the driver changing lanes has to check the blind spot and that Boland was required to follow the rules for safe lane changes. Doc. 42 ¶ 21; Doc. 45 ¶ 21; Doc. 43-7 at 14. Denning further testified that he did not learn of Barrett allegedly brandishing a gun until after this lawsuit was filed. Doc. 43-7 at 23.

Barrett sued Boland and VSD in federal district court in Georgia, alleging that both Defendants were negligent, and that VSD was vicariously liable for Boland's actions under the respondeat superior doctrine. Doc. 1 ¶¶ 8–28. Though the accident occurred in Arizona, Barrett alleged that Boland was negligent per se because he violated a Georgia statute requiring safe lane changes. Id. ¶ 12. Defendants moved to dismiss the complaint, arguing that the Georgia federal court lacked personal jurisdiction over them and that Barrett had filed the case in the wrong venue. Doc. 15. As Defendants explained, Boland was a South Dakota citizen and resident, VSD is a South Dakota limited liability company with its principal place of business in South Dakota, and the accident occurred in Arizona. Id. Rather than rebutting Defendants' arguments, Barrett asked that the case be transferred to the District of South Dakota. Doc. 17. The Georgia district court agreed that it lacked personal jurisdiction over Defendants and that venue was improper, so it transferred the case to this Court under 28 U.S.C. § 1406(a). Doc. 19.

Barrett then moved for leave to amend his complaint to assert a claim for punitive damages. Doc. 29. Barrett's motion for leave to assert a punitive damages claim was a curious one; he had

already raised a claim for punitive damages in his original complaint, and his proposed amended complaint added almost nothing new. This Court nevertheless granted the motion and gave Barrett 14 days to file his amended complaint. Doc. 38. Barrett never did so. Instead, he now moves for partial summary judgment on liability. Doc. 40.

## II. Standard of Review

Summary judgment is proper under the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Main v. Ozark Health, Inc., 959 F.3d 319, 323 (8th Cir. 2020). The moving party has the initial burden to show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must establish that a material fact is genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012).

A party opposing a properly supported motion for summary judgment cannot rely on mere allegations that are unsupported by specific facts or evidence beyond the non-moving party's own conclusions. Eggers v. Wells Fargo Bank, N.A., 899 F.3d 629, 632–33 (8th Cir. 2018). Courts ruling on a summary judgment motion view the facts and inferences fairly drawn from the facts in the nonmoving party's favor, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986); see also Baker v. Silver Oak Senior Living Mgmt. Co., 581 F.3d 684, 687 (8th Cir. 2009), but do not "resort to speculation," Baker, 581 F.3d at 687.

## III. Analysis

One would expect Arizona law to provide the substantive law in a diversity jurisdiction case involving a motor vehicle accident in Arizona. Both parties apply South Dakota law in their briefs, however, so this Court at this point does too. Doc. 41; Doc. 46 at 7; see Netherlands Ins. v. Main St. Ingredients, LLC, 745 F.3d 909, 913 (8th Cir. 2014) ("Because the parties do not dispute the choice of Minnesota law, we assume, without deciding, Minnesota law applies . . . ."); Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

Barrett seeks summary judgment on liability and VSD's vicarious liability. Plaintiffs claiming negligence in South Dakota must show that the defendant owed them a duty, breached that duty, and that this breach was the proximate and factual cause of their injury. Hanson v. Big Stone Therapies, Inc., 916 N.W.2d 151, 158 (S.D. 2018). Questions of breach and proximate cause are for the jury "in all but the rarest of cases" when a reasonable juror could "draw but one conclusion." Stone v. Von Eye Farms, 741 N.W.2d 767, 770 (S.D. 2007) (citation omitted); Hertz Motel v. Ross Signs, 698 N.W.2d 532, 538 (S.D. 2005). Barrett asserts this is one of those rare cases. He argued in his initial brief that Boland was negligent per se because he committed an unsafe lane change. Doc. 41. Barrett did not identify, however, which statute Boland allegedly violated. Boland's response noted this failure, and Barrett argued in his reply brief that Boland violated an Arizona statute requiring that drivers stay "within a single lane" and "not move the vehicle from that lane until the driver has first ascertained that the movement can be made with safety." Ariz. Rev. Stat. § 28-729(1).

Negligence per se occurs when a defendant violates a statute designed to protect the plaintiffs from the type of harm they suffered. Davies v. GPHC, LLC, 980 N.W.2d 251, 263 (S.D.

2022); Hendrix v. Schulte, 736 N.W.2d 845, 849 (S.D. 2007). Absent an excuse, the violation establishes duty and breach, but not the other elements of a negligence claim. Stensland v. Harding Cnty., 872 N.W.2d 92, 95–96 (S.D. 2015). Defendants can establish an excuse for violating a statute by showing:

> (1) Anything that would make compliance with the statute impossible;
> (2) Anything over which the driver has no control which places his car in a position violative of the statute;
> (3) An emergency not of the driver's own making by reason of which he fails to observe the statute; and
> (4) An excuse specifically provided by statute.

Dartt v. Berghorst, 484 N.W.2d 891, 896 (S.D. 1992) (citation omitted).[1]

There is a genuine dispute of material fact on Barrett's negligence per se theory. The facts, when viewed in Boland's favor, show that Boland faced a frightening and uncertain situation. Barrett brandished a gun at Boland and cut in front of and brake-checked Boland's tractor trailer three times. Doc. 43-5 at 6, 12, 14; Doc. 43-6 at 5–6; Doc. 45 ¶¶ 17, 42. At the time of the collision, Boland hoped to get away from Barrett but saw Barrett coming after him at a high speed. Doc. 43-5 at 6, 12, 20, 22. Barrett admitted to Trooper Haymore that he was trying to catch up with Boland to flip him off. Doc. 45 ¶ 38; Doc. 43-1 at 11. The accident happened when Boland switched lanes to pass another semi tractor trailer. Doc. 43-5 at 13. Though Trooper Haymore marked Boland for an unsafe lane change, he did not issue Boland a ticket. Doc. 45 ¶ 48; Doc. 43-1 at 8. Trooper Haymore noted that road rage and Barrett's speeding may have been factors.

---

[1]Arizona substantive law appears similar. See Jensen v. EXC, Inc., No. CV-15-08019, 2019 WL 588034, at *3 (D. Ariz. Feb. 13, 2019) ("In Arizona, a person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se." (cleaned up and citation omitted)); White v. United States, No. CV-10-08128, 2012 WL 2590764, at *12 (D. Ariz. July 5, 2012) ("Arizona law permits a defendant to avoid the effects of the negligence per se doctrine in some circumstances if the defendant can prove that a driver's failure to comply with the traffic code resulted from a legally recognized excuse.").

Doc. 43-2 at 2; Doc. 45 ¶ 32. A reasonable juror could find that Boland's alleged violation of Arizona's safe lane change statute was excused under these circumstances.

Barrett's arguments for summary judgment are not convincing and are more appropriate to make to a jury. He argues first that Boland's and Kitty's testimony is so unbelievable that no jury could credit it. Boland may have some credibility problems should this case go to trial. Trooper Haymore spoke with Boland shortly after the accident but neither Boland nor Kitty mentioned the critical fact that Barrett had brandished a gun. Though Boland told Trooper Haymore that Kitty did not witness the crash, he later testified that Kitty was sitting in the passenger seat and witnessed the incident with Barrett. Doc. 43-5 at 16. Kitty testified that she saw the brake-checking and Barrett flash the gun but did not see the accident because she had moved to the sleeper. Doc. 43-6 at 5–6, 8; Doc. 45 ¶¶ 17–18, 42. The discrepancies in Kitty's and Boland's testimony and their failure to mention the gun to Trooper Haymore may cause a jury to discount their version. But their testimony is not so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007). After all, Trooper Haymore confirmed Barrett had a firearm in his truck, concluded he was speeding, and marked "possible road rage incident" as a contributing circumstance. Doc. 43-1 at 9, 14; Doc. 43-2 at 2; Doc. 45 ¶¶ 32–33. And Barrett himself said he brake-checked Boland and was trying to catch him to flip him off. Doc. 43-1 at 8, 11; Doc. 43-2; Doc. 45 ¶¶ 35, 37–38. A court ruling on a summary judgment motion "should not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue," and this Court cannot do so here. Avenoso v. Reliance Standard Life Ins., 19 F.4th 1020, 1024 (8th Cir. 2021) (cleaned up and citation omitted).

Barrett makes the related arguments that this Court should ignore the gun allegation under the sham affidavit exception and that Boland's "self-serving denial" lacking other support in the

record cannot defeat summary judgment. Doc. 47 at 6–7. "An affidavit is a sham affidavit if it contradicts prior testimony or is a sudden and unexplained revision of testimony that creates an issue of fact where none existed before." Setchfield v. St. Charles Cnty., 109 F.4th 1084, 1091 (8th Cir. 2024) (cleaned up and citation omitted). Barrett does not explain how the sham affidavit rule applies when Kitty and Boland did not give prior testimony about the accident or submit affidavits in this case. As for Boland's testimony lacking support and being self-serving, the Eighth Circuit recently clarified that "neither the absence of supporting documentation nor the self-serving nature of affidavits serve to make such evidence inherently infirm." Hamby v. Iowa, 185 F.4th 816, 825 (8th Cir. 2026) (cleaned up and citation omitted). Barrett's arguments about Boland's and Kitty's credibility are for the finder of fact to decide, not this Court on summary judgment.

Barrett also argues that summary judgment should enter under the Supreme Court of South Dakota's decision in Harmon v. Washburn, 751 N.W.2d 297 (S.D. 2008). The court in Harmon found the defendant negligent as a matter of law because she violated a South Dakota statute requiring a turn signal 100 feet before a turn. Id. at 301. The plaintiff was lawfully passing the defendant in the left lane, going the speed limit, when the defendant made a left turn and collided with the plaintiff. Id. at 299. There was no dispute that the defendant violated South Dakota's turn-signal statute, and the Supreme Court of South Dakota found the defendant was negligent per se. Id. at 301. Unlike in Harmon, there is a material question of fact here on whether Barrett's actions excused Boland's alleged violation of the Arizona statute.

And even if Barrett could show negligence per se, there is a question of fact on whether he was contributorily negligent. Contributory negligence under South Dakota law, if South Dakota substantive law is applied here, is breach of the duty imposed "upon persons to protect themselves

from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." Id. at 301 (citation omitted). South Dakota's unique contributory negligence statute bars recovery if the plaintiff's contributory negligence is more than slight when compared to the defendant's negligence. SDCL § 20-9-2; Westover v. E. River Elec. Power Coop., Inc., 488 N.W.2d 892, 897 (S.D. 1992). Plaintiffs may still recover if their contributory negligence is slight when compared with the defendant's negligence, but then the recovery is reduced. SDCL § 20-9-2. Taking the facts in Boland's favor, Barrett cut in front of Boland's tractor trailer three times to brake check him, flashed a gun, and was speeding to catch up to Boland when the accident occurred. Even under Arizona law, there is some issue of whether Barrett's alleged actions would reduce his recovery as comparative negligence. See Contreras v. Brown, No. CV-17-08217, 2019 WL 1980837, at *9 (D. Ariz. May 3, 2019) (applying Arizona law and denying summary judgment because of a question of fact on causation under a theory of comparative negligence). Trooper Haymore concluded Barrett was speeding and marked "possible road rage incident" as a circumstance contributing to the accident. Doc. 43-2 at 2. There is enough evidence to create a material question of fact on whether Barrett was contributorily negligent more than slight.

Barrett also seeks summary judgment on his claim that VSD is vicariously liable for Boland's negligence. VSD admits that Boland was driving the tractor trailer in the course and scope of his employment when the collision occurred. Doc. 42 ¶ 1; Doc. 45 ¶ 1. "An employer becomes liable for injuries to the person or property of third persons caused by the negligence of his employee when such negligence occurs within the scope of his employee's employment." Tammen v. Tronvold, 965 N.W.2d 161, 169 (S.D. 2021) (cleaned up and citation omitted). "The employer's vicarious liability is a function of status and stems entirely from the tortious conduct

of the employee, not from any tortious conduct by the employer." Cameron v. Osler, 930 N.W.2d 661, 666 (S.D. 2019) (cleaned up and citation omitted). Because this Court has denied summary judgment on Barrett's negligence claim, it must also deny summary judgment on his vicarious liability claim.

## IV. Conclusion

For the reasons explained above, it is

ORDERED that Plaintiff's Motion for Partial Summary Judgment, Doc. 40, is denied.

DATED this 16th day of October, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE